## APPEAL OF OUL BUILDING & LOAN ASSOCIATION.

Docket No. 3865.   Promulgated April 30, 1927.

The petitioner is exempt from taxation, under section 231 (4) of the Revenue Acts of 1918 and 1921 for the years 1918 to 1922, inclusive.

*John J. Babka, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the Commissioner.

The petitioner appeals from the Commissioner's determination of a deficiency of $2,603.32 for the years 1918 to 1922, inclusive. The deficiency results from the refusal to allow petitioner's claim for exemption under section 231 (4) of the Revenue Acts of 1918 and 1921. The petitioner alleges that the total deficiency for the five years amounts to $16,840.30.

### FINDINGS OF FACT.

The petitioner is an Ohio corporation located in Cleveland, having been incorporated under section 9643 of the General Code of Ohio on December 2, 1915. The company was incorporated with a capital stock of $1,000,000 consisting of 5,000 shares of $200 each.

The constitution states the purpose of incorporating as follows:

### ARTICLE II.

#### Purpose

This Association is organized for the purpose of raising money to be loaned among its members and depositors and others on such terms, conditions and securities as may be provided by the By-laws and generally the doing of all things and the transacting of all business authorized by the laws of Ohio to be done and transacted by Building and Loan Associations.

The petitioner received funds from stockholders and nonstockholders. Deposits on hand for period of more than 30 days were paid or credited with interest at the rate of 5 per cent per annum. The source of deposits received by the petitioner during the years in question was as follows:

| Year. | (1) Total depositors. | (2) Non-member depositors. | Percentage (2) is of (1). | (3) Total deposits. | (4) Non-member deposits. | Percentage (4) is of (3). |
|---|---|---|---|---|---|---|
| 1918 | 206 | 74 | 35.92 | $169,101.85 | $59,090.46 | 34.94 |
| 1919 | 319 | 108 | 33.96 | 257,928.25 | 79,493.68 | 30.82 |
| 1920 | 559 | 209 | 37.38 | 447,948.30 | 153,469.70 | 34.26 |
| 1921 | 734 | 277 | 37.74 | 600,481.77 | 197,746.15 | 32.93 |
| 1922 | 1,254 | 327 | 26.08 | 843,304.32 | 234,377.21 | 27.91 |
| Average | | | 34.2 | | | 32.17 |

The funds deposited, interest paid or credited thereon, and the deposits withdrawn as of December 31, are shown for each of the years in the following table:

| Dec. 31. | Deposits received. | Interest credited. | Total. | Withdrawals. | Increase. | Deposits and interest payable. |
|---|---|---|---|---|---|---|
| 1917 | | | | | | $137,630.05 |
| 1918 | $149,950.13 | $7,706.64 | $157,656.77 | $126,184.97 | $31,471.80 | 169,101.85 |
| 1919 | 365,488.74 | 9,969.89 | 375,458.63 | 286,632.23 | 88,826.40 | 257,928.25 |
| 1920 | 892,702.41 | 15,636.85 | 908,339.26 | 718,319.21 | 190,020.05 | 447,948.30 |
| 1921 | 653,070.81 | 25,814.67 | 678,885.48 | 526,352.01 | 152,533.47 | 600,481.77 |
| 1922 | 914,907.76 | 34,813.15 | 949,720.91 | 706,898.36 | 242,822.55 | 843,304.32 |

When depositors made withdrawals they were required to do so in person and to present their pass books in which the amount withdrawn was entered. This was true regardless of whether the depositor was a member of the association or not. The petitioner then drew a check on its depository for the amount withdrawn in favor of the withdrawing depositor. The association had no checking accounts.

The petitioner borrowed and repaid funds as follows during the taxable years in question:

| Jan. 1. | Borrowed. | Repaid. | Indebtedness Dec. 31. | Jan. 1. | Borrowed. | Repaid. | Indebtedness Dec. 31. |
|---|---|---|---|---|---|---|---|
| 1918 | $10,000 | $7,000 | $3,000 | 1921 | $30,000 | $50,000 | $20,000 |
| 1919 | 40,000 | 3,000 | 40,000 | 1922 | 95,000 | 115,000 | None. |
| 1920 | 40,000 | 40,000 | 40,000 | | | | |

The petitioner secured funds to loan to members by the sale of its running or installment stock. The shares had a par value of $200 and the subscriber paid 50 cents per week on each share. The receipts from these payments, plus dividends, less withdrawals, leaving a credit balance as of December 31, is shown by the next table:

| Dec. 31. | Dues on running stock. | Dividends credited. | Total. | Withdrawals. | Credit balance as of Dec. 31. |
|---|---|---|---|---|---|
| 1917 | | | | | $111,054.28 |
| 1918 | $88,195.50 | $5,514.85 | $93,710.35 | $30,430.39 | 174,334.24 |
| 1919 | 113,789.50 | 13,772.74 | 127,562.24 | 48,009.87 | 253,826.61 |
| 1920 | 167,741.50 | 20,632.32 | 188,373.82 | 49,039.28 | 393,161.15 |
| 1921 | 174,681.00 | 33,186.13 | 207,867.13 | 86,405.15 | 514,623.13 |
| 1922 | 222,915.59 | 27,185.65 | 250,101.24 | 266,173.43 | 498,550.94 |

The paid-up capital stock, the total number of nonborrowing stockholders, and the amount of stock they held, the number of borrowing stockholders and the total number of stockholders, follow:

| Year. | Paid-up stock. | Nonborrowing stockholders. | Shares of running stock. | Paid-up shares. | Borrowing stockholders. | Total stockholders. |
|---|---|---|---|---|---|---|
| 1918 | $3,000 | 1,061 | 3,061 | 15 | 200 | 1,261 |
| 1919 | 4,400 | 1,432 | 4,282 | 22 | 267 | 1,699 |
| 1920 | 37,600 | 1,937 | 5,973 | 183 | 373 | 2,310 |
| 1921 | 68,000 | 2,586 | 8,916 | 335 | 458 | 3,044 |
| 1922 | 180,600 | 2,857 | 8,448 | 878 | 532 | 3,389 |

The petitioner made loans to members on mortgage security or on pass book or stock security. Loans were made only to members owning one or more shares of stock of the corporation which qualification for membership was provided for in the by-laws. Loans on

mortgage security were all made to members owning running stock with one exception; one stockholder owning paid-up stock secured a loan. From 1918 to 1922, inclusive, the 698 members securing loans owned stock on the following bases:

| Stockholders owning— | 1918. | 1919. | 1920. | 1921. | 1922. | Total. |
|---|---|---|---|---|---|---|
| One share | 58 | 105 | 138 | 97 | 149 | 547 |
| Two to 10 shares, inclusive | 18 | 32 | 37 | 22 | 28 | 137 |
| More than 10 shares | | | 1 | 1 | 3 | 9 | 14 |

A recapitulation of the loans on mortgages for the five years shows that individuals, partnerships, and corporations secured loans as follows: 9 loans for business block development; 29 loans to purchase or construct dwellings; 6 loans for the purchase of land or lots; 1 loan for allotment purchases; 1 loan to purchase an apartment; and 652 loans to purchase, construct or refinance homes. The parties stipulated that loans on "homes" meant loans to shareholders in connection with real estate not primarily for rent or sale; and that loans on "dwellings" meant loans to shareholders on real estate primarily for rent or sale.

Interest charged stockholders on mortgage loans ranged from 6 per cent to 8 per cent. Original loans were practically all made at interest rates of 7 per cent and 7½ per cent. One loan was made at 8 per cent, three loans at 6 per cent, and seven at 6½ per cent, and the balance at 7 per cent and 7½ per cent. After the loan became less than 50 per cent of the mortgage security, and if the installments had been promptly met, it was a policy of the association to reduce the interest rate by ½ per cent to 1 per cent. Approximately 29 per cent of the loans were reduced during the five-year period. Interest charged on loans on pass-book or stock security was 6 per cent per annum. From 1918 to 1922, inclusive, 349 loans were made on pass-book or stock security.

The loans obtained by members were of two kinds, viz., straight loans and installment loans. Straight loans matured at one time in their entirety, and were made on real estate not "in excess of 50 per cent of the appraised value thereof, unless such loan shall mature within three years from date." (Sec. 24, by-laws.) Installment loans were payable by weekly or monthly installments. The loans could not "exceed two-thirds of the appraised value of the security offered," and were subject to certain terms and conditions contained in the contract. (Sec. 25, by-laws.) Loans were also made on pledged stock of the association. On such loans members could borrow within five dollars of the amount which they had paid in to the association on their stock.

Loans made, receipts on mortgage loans, yearly increase, and total loans receivable on the thirty-first of December for each year are as follows:

| Year. | Loans made. | Receipts on mortgage loans. | Increase in loans receivable. | Loans receivable Dec. 31. |
|---|---|---|---|---|
| 1917 | | | | $266,121.30 |
| 1918 | $175,166.39 | $79,870.00 | $95,296.39 | 301,417.69 |
| 1919 | 370,261.53 | 186,902.50 | 183,359.03 | 544,776.72 |
| 1920 | 587,409.81 | 245,700.26 | 341,709.55 | 886,486.27 |
| 1921 | 527,359.09 | 207,736.07 | 320,123.02 | 1,206,609.29 |
| 1922 | 673,498.81 | 368,131.11 | 305,368.70 | 1,511,977.99 |

From time to time funds were received by petitioner from payments or transactions which constituted credits to mortgages. Such credits were applied to the loan account only after a certain sum had accumulated with respect to each loan. The amounts credited during each year, amount applied on loan accounts, yearly increase, and total credits unapplied to mortgage loans on December 31 follow:

| Year. | Credits. | Credited on loans. | Increase. | Unapplied credits on Dec. 31. |
|---|---|---|---|---|
| 1917 | | | | $17,620.94 |
| 1918 | $16,152.70 | | $16,152.70 | 33,773.64 |
| 1919 | 28,315.45 | $13,150.19 | 15,165.26 | 48,938.90 |
| 1920 | 48,796.66 | 26,165.73 | 22,630.93 | 71,569.83 |
| 1921 | 60,150.99 | 18,590.70 | 41,560.29 | 113,130.12 |
| 1922 | 74,005.80 | 34,108.59 | 39,897.21 | 153,027.33 |

The petitioner paid or credited stockholders with dividends at the rate of 8 per cent for 1918, 1919, and 1920; 9 per cent for 1921; and 7½ per cent for 1922. The by-laws of the association contain the following section as to dividends:

### Dividends

Sec. 14. The Board of Directors shall, on the second Wednesday in January and July of each year, declare such dividends as it may determine from the earnings of the Association after deducting from said earnings all expenses and interest and also such sum as it may reserve for the fund for the payment of contingent losses and any balance of said earnings thereafter remaining, it shall carry into the Undivided Profit Fund, which Fund shall be subject to such purposes and uses as the Board of Directors may lawfully direct, provided that the total Undivided Profit Fund shall at no time exceed three per cent of the assets.

*The dividend so declared shall be divided among all members in proportion to the amount paid in by each member as dues on his stock.* The amount paid in at the time the preceding dividend was declared, unless the same has been since withdrawn, shall be the basis of calculation.

The dividends declared shall be credited on the pass books of depositing members in January and July of each year, and holders of certificates of

paid-up stock shall be entitled to receive the dividends in cash at the office of the Association within ten days after the same have been declared. (Italics ours.)

The undivided profits were increased at the end of each year as follows:

| | |
|---|---:|
| December 31, 1917 | $993. 11 |
| December 31, 1918 | 3, 825. 36 |
| December 31, 1919 | 5, 408. 71 |
| December 31, 1920 | 8, 823. 57 |
| December 31, 1921 | 10, 248. 69 |
| December 31, 1922 | 18, 249. 73 |

The income, deductions, and distribution of net income for each of the years 1918 to 1922, inclusive, are as follows:

INCOME, DEDUCTIONS, AND DISTRIBUTIONS.

| | 1918. | 1919. | 1920. | 1921. | 1922. |
|---|---:|---:|---:|---:|---:|
| *Income.* | | | | | |
| Interest | $20, 518. 51 | $31, 449. 71 | $52, 290. 25 | $74, 734. 09 | $95, 887. 99 |
| Fines | 262. 40 | 241. 92 | 217. 82 | 135. 20 | 1, 690. 59 |
| Pass-book fees, etc | 583. 50 | 1, 266. 50 | 2, 720. 00 | 2, 229. 00 | 2, 456. 50 |
| Rent from R. E. | | 1, 726. 00 | 2, 935. 00 | 2, 530. 60 | 3, 671. 00 |
| Interest on L. B. | | 98. 36 | | 61. 69 | 70. 11 |
| Escrow service | | | 2, 581. 45 | 5, 373. 20 | 6, 628. 94 |
| Interest on Com. a/c | | | | 1, 111. 85 | 1, 037. 71 |
| Total | 21, 364. 41 | 34, 782. 49 | 60, 744. 52 | 86, 175. 03 | 111, 442. 84 |
| *Deductions.* | | | | | |
| Interest on deposits | 7, 706. 64 | 9, 969. 89 | 15, 636. 85 | 25, 814. 67 | 34, 813. 15 |
| Interest on borrowed money | 175. 30 | 1, 366. 20 | 2, 144. 00 | 1, 421. 97 | 1, 814. 37 |
| Salaries, Officers | 2, 772. 00 | 3, 490. 00 | 5, 190. 50 | 6, 506. 55 | 8, 306. 97 |
| Salaries and expenses | 1, 107. 00 | 1, 318. 00 | 2, 394. 00 | 3, 376. 60 | 6, 024. 00 |
| Other expenses | 522. 18 | 1, 485. 44 | 2, 123. 50 | 4, 889. 24 | 6, 887. 18 |
| Repairs and depreciation | | 481. 42 | 568. 45 | 844. 99 | 1, 806. 08 |
| Total | 12, 283. 12 | 18, 110. 95 | 28, 057. 30 | 42, 854. 02 | 59, 651. 75 |
| Net Income | 9, 081. 29 | 16, 671. 54 | 32, 687. 22 | 43, 321. 01 | 51, 791. 09 |
| *Distributions.* | | | | | |
| Dividends on running stock | 5, 514. 85 | 13, 772. 74 | 20, 632. 32 | 33, 186. 13 | 27, 185. 65 |
| Dividends on paid-up stock | 260. 80 | 381. 00 | 2, 440. 04 | 5, 194. 76 | 10, 119. 40 |
| Reserve fund | 473. 39 | 934. 45 | 6, 200. 00 | 3, 515. 00 | 6, 485. 00 |
| Undivided profit | 2, 832. 25 | 1, 583. 35 | 3, 414. 86 | 1, 425. 12 | 8, 001. 04 |
| Total | 9, 081. 29 | 16, 671. 54 | 32, 687. 22 | 43, 321. 01 | 51, 791. 09 |

The balance sheet of the petitioner at the end of each of the years 1918 to 1922, inclusive, is as follows:

| | Year ended December 31— | | | | |
|---|---:|---:|---:|---:|---:|
| | 1918. | 1919. | 1920. | 1921. | 1922. |
| ASSETS. | | | | | |
| Cash | $21, 348. 30 | $26, 538. 38 | $69, 472. 13 | $48, 492. 13 | $128, 880. 0ʌ |
| Loans on mortgage | 361, 417. 69 | 544, 776. 72 | 886, 486. 27 | 1, 206, 609. 29 | 1, 511, 977. 90 |
| Loans on pass books or stock | 2, 155. 00 | 3, 335. 00 | 12, 002. 00 | 18, 755. 00 | 14, 628. 00 |
| Bonds | 2, 458. 40 | 1, 142. 68 | 1, 142. 68 | 1, 142. 68 | |
| Government securities | 521. 25 | 521. 25 | 521. 25 | 521. 25 | 521. 25 |
| Real estate | | 37, 500. 00 | 37, 500. 00 | 49, 098. 95 | 49, 950. 99 |
| Deposits with others | | 149. 96 | | 10, 000. 00 | 10, 000. 00 |
| Furniture and fixtures | | | | 5, 688. 83 | 5, 000. 00 |
| Accounts | | | | 94. 75 | |
| | 387, 900. 64 | 613, 963. 99 | 1, 007, 124. 33 | 1, 340, 402. 88 | 1, 720, 958. 24 |

| | Year ended December 31— | | | | |
| --- | --- | --- | --- | --- | --- |
| | 1918. | 1919. | 1920. | 1921. | 1922. |
| LIABILITIES. | | | | | |
| Running stock and dividends | $174,334.24 | $253,826.61 | $393,161.15 | $514,623.13 | $498,550.94 |
| Paid-up stock | 3,000.00 | 4,400.00 | 37,600.00 | 68,000.00 | 180,600.00 |
| Deposits and accrued interest | 169,101.85 | 257,928.25 | 447,948.30 | 600,481.77 | 843,304.32 |
| Credits on mortgage loans | 33,773.64 | 48,938.90 | 71,569.83 | 113,130.12 | 153,027.33 |
| Reserve fund | 865.55 | 1,800.00 | 8,000.00 | 11,515.00 | 18,000.00 |
| Borrowed money | 3,000.00 | 40,000.00 | 40,000.00 | 20,000.00 | |
| Escrow fund | | | | | 7,421.05 |
| Undivided profit | 3,825.36 | 5,408.71 | 8,823.57 | 10,248.69 | 18,249.73 |
| Payables | | 1,661.52 | 21.48 | 2,404.17 | 1,804.87 |
| | 387,900.64 | 613,963.99 | 1,007,124.33 | 1,340,402.88 | 1,720,958.24 |

OPINION.

MORRIS: The petitioner alleges its exemption from tax under section 231 (4) of the Revenue Acts of 1918 and 1921. Section 231 (4) of the 1918 Act provides:

That the following organizations shall be exempt from taxation under this title— * * * (4) Domestic building and loan associations and cooperative banks without capital stock organized and operated for mutual purposes and without profit.

Section 231 (4) of the 1921 Act states the exemption as follows:

That the following organizations shall be exempt from taxation under this title— * * * (4) Domestic building and loan associations substantially all the business of which is confined to making loans to members * * *.

The Commissioner contends that the petitioner lacks several of the essential characteristics of the legitimate building and loan association, namely, mutuality, and the accumulation of funds primarily for making loans to members for the purpose of building or acquiring homes, that the business resulted in large profit to those who neither borrowed nor furnished the capital used in the business of the taxpayer; that the profits accrued to the benefit of a small group precisely as in the case of an ordinary corporation trading in money or merchandise, and that petitioner is therefore in the same class with corporations which operate a financial business for the benefit of their shareholders and should stand in no better position for the purpose of Federal taxation than similar institutions.

We have previously, in an extended opinion, considered the nature of building and loan associations and reviewed the Federal court decisions pertaining thereto. *Appeal of Johnstown Building & Loan Association*, 6 B. T. A. 463. We could rest the decision in this proceeding (that the petitioner comes within the provisions of section 231 (4) of the Revenue Acts of 1918 and 1921) on the ruling therein made that that organization was exempt for the year 1922, although taxable for the prior years, the sole distinction being that

for said year all of its loans except two were made to members. Such disposition, however, is not consonant with the importance of the question involved. In view of that opinion we deem it unnecessary to retrace the field therein covered, and therefore merely restate some of the principles to be drawn from it and the cases therein cited.

All the authorities agree that the distinguishing characteristic of building and loan associations is the substantial mutuality of benefit existing between the members. Such mutuality implies that borrowing members and lending members participate in earnings on a fairly equal basis or members share in the profits on substantially the same footing. Mutuality is not destroyed by the issuance of prepaid shares upon which there may be an inequality in the returns to the prepaying shareholder and the other shareholder in favor of one or the other. The borrowing of money by a building and loan association in the furthering of the purpose of its organization does not of itself change the character of the organization, nor destroy the mutuality between the members. Exemption to a true building and loan association can not be denied because it does not require each borrowing member to subscribe for an amount of stock equal to the face of his loan. Any association which maintains the requisite mutuality is entitled to exemption entirely without regard to the amount of stock subscribed by its borrowing members. Congress in all of the acts, from 1909 to 1921, has granted an exemption from income and profits taxation only to those associations organized for mutual benefit or mutual purposes. Some measure of departure like the borrowing of funds from nonmembers or the making of loans to nonmembers when done merely as an incident to the general purpose of the organization does not defeat the exemption. When an organization, however, departs from the general purposes of a building and loan association and enters the field commonly occupied by savings banks and mortgage loan companies, said organization is no longer operated along the lines peculiar to building and loan associations.

Viewing the facts in the instant case in the light of the above principles we reach the conclusion that the petitioner is exempt from taxation for the years in question. The petitioner is operated for mutual purposes in that all the members share equally in the profits of the association to the extent of their stock. Loans were made exclusively to members and although not all for the purpose of building and acquiring homes, the loans for other purposes were few when compared with the bulk of the business and merely incidental. The loans were not all made on the basis of the borrowers' stockholdings, but exemption can not be denied on that ground.

The reason for our conclusion is further clarified when the facts are compared with those of the *Johnstown Building & Loan Association*, *supra*, for the years 1919 to 1921 inclusive, in which we disallowed the exemption claimed, and *Lilley Building & Loan Co.* v. *Miller*, 280 Fed. 143, in which the United States District Court denied exemption and was sustained by the Circuit Court of Appeals, 285 Fed. 1020. In each of the above cases most of the business was conducted with nonmembers. In the instant case, outside of the money obtained from depositors who were nonmembers, all of the business of the association was done with members. Deposits by nonmembers over the five-year period averaged 32.17 per cent of the total deposits. Comparing the facts pertaining to the year 1920 in this and the *Lilley* case we find that the Lilley Company had 301 stockholders, two of whom, out of a total of 495, were borrowers; the petitioner had 2,310 stockholders, 373 of whom were borrowers, all borrowers being stockholders. The Lilley Company had 2,239 savings depositors; the petitioner 1,254 depositors, 927 of whom were stockholders. In the *Lilley* case, paid-up stock exceeded the running or installment stock while in the instant case the paid-up stock is less than one-tenth of the installment stock in amount.

In the *Johnstown* case the association did most of its business with nonmembers during the years 1919, 1920, and 1921, most of its loans and deposits being made to and received from nonstockholders. Its paid-up stock was greatly in excess of that of the petitioner while its running stock was substantially less.

The consideration of the above facts in the *Lilley* and *Johnstown* cases clearly distinguishes those cases from the instant proceeding. The factors determinative of the denial of exemption in those cases are the strongest links in support of the petitioner's exemption.

> *Judgment will be entered for the petitioner on 15 days' notice, under Rule 50.*